### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| KALKEYLIUSS HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 19 CV 5878 |
| The CITY OF CHICAGO, a municipal | ) | |
| Corporation, Chicago Police Superintendent | ) | Judge |
| EDDIE JOHNSON, and Chicago Police Chiefs | ) | |
| FRED WALLER, BARBARA WEST, former | ) | Magistrate Judge |
| Chief KEITH CALLOWAY, and Chicago Police | ) | |
| Captain NOEL SANCHEZ, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, KALKEYLIUSS HARRIS, by his attorneys, the HAMILTON LAW OFFICE, LLC, makes the following complaint against Defendants the CITY OF CHICAGO ("Defendant CITY"), Chicago Police Superintendent EDDIE JOHNSON ("Defendant SUPERINTENDENT"), Chicago Police Chiefs FRED WALLER and BARBARA WEST, and former Chicago Police Chiefs KEITH CALLOWAY and NOEL SANCHEZ ("DEFENDANT CHIEFS"):

## JURISDICTION and VENUE

1. This case is brought pursuant to 42 U.S.C. §§1983 and 12101 *et seq.* and 740 ILCS 174/15(b) and 20.1 to redress the deprivation under color of law Plaintiff's rights as secured by the United States Constitution, the Americans With Disabilities Act, and the Illinois Whistleblower Act.

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§1331, 1343, and 1367. Notice of a right to sue was provided to Plaintiff on June 13, 2019 by the Equal Employment Opportunity Commission (EEOC).

3.   Venue is proper under 28 U.S.C. §1391(b). All parties reside in this judicial district and the events giving rise to the claims asserted in this complaint occurred within this district.

## PARTIES

4.   KALKEYLIUSS HARRIS ("Harris") is a resident of Chicago, Illinois and a Chicago police officer.

5.   At all relevant times, Defendant SUPERINTENDENT and Defendant CHIEFS are or were Chicago Police Officers, employed by Defendant CITY, acting under color of law and within the scope of their employment.

6.   Defendant CITY is a municipal corporation, duly incorporated under the laws of the State of Illinois, and at all relevant times was the employer and principal of Defendant SUPERINTENDENT and Defendant CHIEFS. Should Plaintiff prevail on his claims, Defendant CITY must indemnify Defendant SUPERINTENDENT and Defendant CHIEFS pursuant to 735 ILCS 10/9-102.

7.   Defendant CITY is Harris's employer as defined under the Americans With Disabilities Act and the Illinois Whistleblower Act.

## FACTS

8.   Harris is 45 years old and a lifetime resident of the city of Chicago.

9.   Harris became a Chicago police officer in May 2001 and has been a member of the Chicago Police Department ("CPD") for over 18 years.

10.  Throughout his career with CPD, Harris has been assigned or detailed to various specialized units including, the gang unit, special operations, various tactical teams, and the narcotics unit.

11.  In approximately March of 2014 Harris was assigned to the narcotics unit, where he excelled.

12.  In early 2017, Harris was under a significant amount stress as a result of personal issues.

13. With the assistance of Defendant CITY's Employee Assistance Program ("EAP"), Harris went on medical leave and checked into a treatment facility in Utah in March 2017.

14. In April 2017 Harris returned home and continued with outpatient treatment at Defendant CITY's request.

15. In September 2017 Harris was medically cleared to return to work by Defendant CITY. This process required Harris to undergo psychological and physical screenings by doctors of Defendant CITY's choosing.

16. In September 2017 Harris returned to the narcotics unit, under a new commander, Ronald Kimble.

17. Upon learning of the reason for Harris's absence, Commander Kimble removed Harris from the narcotics unit against Harris's wishes.

18. Harris was then briefly reassigned to the Gang Intelligence Unit. Shortly after being reassigned to the this Gang unit, however, his Commander, Christopher Kennedy, called him into a meeting and expressed concerns about Harris's mental health.

19. In February of 2018, Harris was re-assigned to patrol where he had started his career many years before.

20. When a police officer is removed from a specialized unit and re-assigned to the patrol division against his or her wishes that is considered in CPD to be an adverse and negative personnel decision.

21. Within the culture of CPD, the term that is used for a re-assignment such as the one that was ordered for Harris is that he was "dumped" back to patrol.

22. Harris was and still is able to perform the essential functions of a police officer assigned to the narcotics unit.

23. Harris was a disabled person or, in the alternative, was perceived by Defendant CITY to be a disabled person as this term is defined in the ADA as he was a qualified individual with a disability and/or was perceived by his employer as unable to perform the duties of his position and was re-assigned based upon this perception.

24. On September 3, 2018, CPD Superintendent Eddie Johnson sent out a department-wide email regarding officer mental health after a second CPD officer in three months had committed suicide.

25. Superintendent Johnson's email urged CPD members to seek help from EAP if they were experiencing difficulty dealing with personal or job related stress.

26. On September 4, 2018, Harris sent an email to Superintendent Johnson and other members of CPD command staff responding to Superintendent Johnson's email.

27. Harris's email disclosed that he received assistance from EAP for alcoholism and, instead of being supported, the Department discriminated against him by removing him from his position and re-assigning him to patrol.

28. In early September 2018 Harris also spoke with a reporter from a local news outlet who was interested in airing a story about police officer mental health issues and their reluctance to seek treatment.

29. On September 13, 2018 Harris sent an email to CPD's Office of News Affairs requesting permission to participate in a news interview to raise awareness for officers who are suffering emotionally and afraid to seek help.

30. In retaliation for his September 4th email to the SUPERINTENDENT and CHIEFS, and/or in retaliation for his disclosure to a reporter and request participate further in a news story about his negative experiences after seeking help, Harris was stripped of his police powers on September 17, 2018.

31. Being stripped of your police powers is considered within CPD to be an adverse and negative personnel decision.

32. Harris was again evaluated by physicians of Defendant CITY's choosing and he was again cleared physically and mentally and returned to work on November 2, 2018.

33. The mental health of Defendant CITY's police officers is a matter of great public concern.

34. By speaking out about CPD's discrimination against officers who seek mental health and/or alcoholism treatment, Harris was speaking as a private citizen of the city of Chicago.

35. Harris was protecting the public interest by attempting to shed light on CPD's failure to ensure its officers are not deterred from seeking mental health assistance when they need it. The entire city of Chicago is a safer place when its police officers are mentally fit.

36. In sending the September emails and talking to a member of the media, Harris was also disclosing what he reasonably believed was a violation of state and/or federal law to a local government agency.

37. In sending the September emails and talking to a member of the media, Harris was attempting to and did disclose public wrongdoing.

**COUNT I**
(42 U.S.C. §1983, First Amendment Retaliation Claim)

38. Each of the preceding paragraphs is re-alleged as if fully restated here.

39. As described above, Harris engaged in activity protected by the First Amendment when he disclosed Defendant CITY's retaliation and discrimination against CPD officers who utilize EAP's services.

40. As described above, Harris engaged in activity protected by the First Amendment when he spoke to the media about Defendant CITY's retaliation and discrimination against CPD officers who utilize EAP services.

41. Defendants' attempts to silence Harris by stripping him of his police powers deters him and others from exercising their First Amendment rights and duties in disclosing retaliation and/or discrimination.

42. Harris's First Amendment activity concerning his disclosure of Defendant CITY's retaliation and discrimination was a motivating factor in Defendants decision to strip Harris of his police powers.

43. As a direct and proximate result of Defendants' misconduct, Harris suffered damages, which will be proven at trial.

   **WHEREFORE**, Harris prays for a judgment against Defendants in a fair and just amount sufficient to compensate him for his damages, plus punitive damages, as well as court costs, attorney's fees, and such other relief as is just and equitable.

## COUNT II
(42 U.S.C. §12101, *et seq.*, American With Disabilities Act)

44. Each of the preceding paragraphs is re-alleged as if fully restated here.

45. The ADA protects individuals who have disabilities and also those who are incorrectly "regarded as" or perceived to have disabilities. 42 U.S.C. Section 12102(3)(A).

46. Harris suffers from alcoholism and is thus disabled under the ADA.

47. In the alternative, Defendant CITY regarded Harris as "disabled."

48. Harris is and was qualified to perform the essential functions of a Chicago police officer assigned to the narcotics unit.

49. Defendant CITY discriminated against Harris on account of his actual or a perceived disability by dumping him back to patrol.

50. Defendant CITY would not have transferred Harris if he were not disabled, or, in the alternative, if Defendant CITY had not erroneously perceived Harris as disabled.

51. When it transferred Harris because of his disability, or, in the alternative, his perceived disability, Defendant CITY took an adverse job action against him, thus violating the ADA.

   **WHEREFORE**, Harris prays for judgment against Defendant CITY in a fair and just amount sufficient to compensate Harris for the damages he has suffered, as well as costs and attorneys' fees pursuant to 42 U.S.C. § 12205, and such other relief as is just and equitable.

## COUNT III
(740 ILCS 174/15(b) and 20.1, Illinois Whistleblower Act)

52. Each of the preceding paragraphs is re-alleged as if fully restated here.

53. Defendant CITY is Harris's "employer" as defined by the Illinois Whistleblower Act.

54. As more fully described above, Defendant CITY retaliated against Harris for his disclosure of discrimination against him for his disability and for his utilizing Defendant CITY's EAP, which Harris had reasonable cause to believe violated State and federal law, rules, or regulations.

55. As more fully described above, Defendant CITY retaliated against Harris for his attempt to disclose and actual disclosure of public wrongdoing.

56. Harris suffered retaliation for disclosing matters of public wrongdoing: Chicago police department personnel discriminating against members who seek help from Defendant CITY's EAP.

57. As a result of this retaliation, Harris has suffered damages.

   **WHEREFORE**, Harris prays for a judgment against Defendant CITY granting Harris:

   A. Reinstatement in a similar unit;

   B. Back Pay with interest;

   C. The cost of any lost benefits during the time he was stripped of his police powers;

   D. Emotional damages;

   E. Compensation for litigation costs, expert witness fees, and reasonable attorneys' fees;

7

      F.   Compensation for any other damages sustained and any other relief as is just and

         equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully submitted,

KALKEYLIUSS HARRIS, Plaintiff

By: /s Torreya L. Hamilton
    Attorney for Plaintiff

HAMILTON LAW OFFICE, LLC
53 West Jackson Boulevard, Suite 452
Chicago, Illinois 60604
312.726.3173
tlh@thehamiltonlawoffice.com
Attorney No. 6229397