IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KALKEYLIUSS HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF CHICAGO, a Municipal Corporation, Chicago Police Superintendent EDDIE JOHNSON, and Chicago Police Chiefs FRED WALLER, BARBARA WEST, former Chief KEITH CALLOWAY, and Chicago Police Captain NOEL SANCHEZ,<br><br>Defendants. | Case No. 19 cv 5878<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kalkeyliuss Harris ("Harris"), is a Chicago police officer who raised concerns about allegedly discriminatory treatment he received after he took medical leave from his job. Harris brings claims against all Defendants for violating his First Amendment rights and against the City under the Illinois Whistleblower Act.[1] The City of Chicago ("City"), then-Superintendent Eddie Johnson ("Johnson"), Chief Fred Waller ("Waller"), Chief Keith Calloway ("Calloway"), and Captain Noel Sanchez ("Sanchez") (collectively, "Defendants") jointly move to dismiss Counts I and III under Federal Rule of Civil Procedure 12(b)(6). For reasons stated herein, Defendants' Motion to Dismiss [25] is granted in part and denied in part.

---

[1] Harris also brings a claim under the American with Disabilities Act (ADA) (Count II). Defendants do not move to dismiss that claim. (Dkt. 26 at 2).

1

## I.    Background

The following factual allegations are taken from the Complaint (Dkt. 1) ("Compl." or "Complaint") and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Harris has been a member of the Chicago Police Department ("CPD") for more than 18 years. During that time, he was assigned to a number of specialized units, including the gang unit and the narcotics unit. He was assigned to the narcotics unit around March 2014. (Compl. ¶¶ 9-11). In March 2017, Harris went on medical leave and checked into a treatment facility for alcoholism, with the assistance of the City's Employee Assistance Program ("EAP"). (*Id.* ¶¶ 13, 27). Harris continued with outpatient treatment in April 2017 at the City's request, and in September 2017, he was medically cleared by the City to return to work. (*Id.* ¶¶ 14-15).

When Harris returned to work, his commander, Ronald Kimble, learned the reason for Harris's absence and removed Harris from the narcotics unit against Harris's wishes. Harris was reassigned to the Gang Intelligence Unit. Shortly thereafter, the commander of that gang unit, Christopher Kennedy, expressed concerns to Harris about Harris's mental health. (Commanders Kimble and Kennedy are not named as defendants). In February 2018, Harris was re-assigned to patrol. According to Harris, within CPD culture, a reassignment from a specialized unit to patrol is known as being "dumped" – it is viewed as an adverse and negative personnel decision. (Compl. ¶¶ 16-21).

2

On September 3, 2018, then-Superintendent Johnson sent a department-wide email about officer mental health. The email urged CPD members to seek help from EAP if they experienced issues handling personal or job-related stress. (Compl. ¶¶ 24-25). The following day, September 4, Harris replied to Johnson, copying other CPD staff. (*Id.* ¶ 26). In that email, Harris said that he received assistance from EAP for alcoholism and claimed that CPD discriminated against him by re-assigning him to patrol. (*Id.* ¶ 27).

In early September 2018, Harris spoke with a local news reporter "who was interested in airing a story about police officer mental health issues and [officers'] reluctance to seek treatment." (Compl. ¶ 28). Harris alleges that he "spoke to the media about [the City's] retaliation and discrimination against CPD officers who utilize EAP services." (*Id.* ¶ 40). On September 13, 2018, Harris sent an email to CPD's Office of News Affairs requesting permission to participate in a news interview to "raise awareness for officers who are suffering emotionally and who are afraid to seek help." (*Id.* ¶ 29). Harris alleges that he requested to "participate further in a news story about his negative experiences after seeking help." (*Id.* ¶ 30).

Four days later, on September 17, 2018, Harris "was stripped of his police powers"—an action Harris says is considered within CPD to be "an adverse and negative personnel decision." (Compl. ¶¶ 30-31). Harris was evaluated by physicians of the City's choosing, cleared physically and mentally, and returned to work on November 2, 2018. (*Id.* ¶ 32).

3

## II.     Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671

4

F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

### III.   Analysis

### A. First Amendment (Count I)

Defendants argue that Harris failed to state a First Amendment claim because he (1) failed to allege the City is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), (2) did not sufficiently allege personal involvement of the individual defendants, and (3) failed to show he spoke as a private citizen rather than pursuant to his official duties.

Harris alleges that Defendants violated his First Amendment rights by retaliating against him for disclosing the City's retaliation and discrimination against CPD officers who use EAP services. (Compl. ¶¶ 39-40). A prima facie First Amendment retaliation case requires that an employee show: "(1) [his] speech was constitutionally protected; (2) [he] has suffered a deprivation likely to deter free speech; and (3) [his] speech was a motivating factor in the employer's decision." *Redd v. Nolan*, 663 F.3d 287, 294 (7th Cir. 2011). The Court finds that Harris has failed to state a *Monell* claim against the City and failed to sufficiently allege personal involvement of the individual defendants.

### 1. Harris Fails to State a Monell Claim

To successfully sue a local government under § 1983, the plaintiff's injury must result from official governmental policy or custom or from the decision of a municipal agent with "final policymaking authority". *Monell*, 436 U.S. at 694; *Milestone v. City*

*of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011). *See also Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993).

Here, Harris does not allege that any City policy or custom deprived him of his First Amendment rights. Nor does he allege that a person with final policymaking authority caused his injury. Moreover, Harris's allegation of being stripped of his police powers (Compl. ¶¶ 41-42) does not rise to the level of a *Monell* claim which "requires conduct in more than one instance." *Lanton v. City of Chi.*, 2017 U.S. Dist. LEXIS 19741, at *10 (N.D. Ill. Feb. 13, 2017) (quoting *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010)). Indeed, Harris concedes in his response brief that he does not bring a *Monell* claim. (Dkt. 32 at 9). The City is therefore dismissed from Count I.

Harris argues, however, that he seeks indemnification from the City, and his Complaint asserts that should he prevail, the "City must indemnify Defendant Superintendent and Defendant Chiefs pursuant to 735 [sic] ILCS 10/9-102."[2] (Compl. ¶ 6). It is well-settled that 745 ILCS 10/9-102 applies to the City, and Harris may seek indemnification on that basis. *See Perkins v. O'Shaughnessy,* 2011 U.S. Dist. LEXIS 12775, at *7 (N.D. Ill. Feb. 9, 2011); *Turner v. City of Chi.*, 2013 U.S. Dist. LEXIS 113122, at *21 (N.D. Ill. Aug. 12, 2013).[3]

---

[2] The proper citation for public entity indemnification is 745 ILCS 10/9-102.

[3] *See also Ramos v. Drews*, 2018 U.S. Dist. LEXIS 178033, at *54 (N.D. Ill. Oct. 16, 2018) ("Illinois law requires the Village to pay judgments entered against individual defendants if they were acting under color of state law and within the scope of their employment") (quotations and citation omitted).

### 2. *Personal Involvement of the Individual Defendants*

Harris fails to sufficiently plead personal involvement of any of the individual defendants. *See Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) ("An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.") (emphasis in original) (citation omitted). A plaintiff's allegations should "adequately connect specific defendants to illegal acts." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009).

Harris appears to direct his allegations at all five individual Defendants, but nowhere in his Complaint does he reference any particular act by any Defendant. He alleges, without identifying any defendant, that he "was stripped of his police powers." (Compl. ¶ 30). He also generally alleges that "Defendants' attempts to silence [him] by stripping him of his police powers deters him and others from exercising their First Amendment rights…." (*Id*. ¶41). In *Brooks*, although the plaintiff directed his § 1983 "allegation at all of the defendants", parts of the complaint specified that "defendants engaged in a variety of activities: Ross produced investigative reports; Montes and Sula gave interviews; and Ponsetto and Carter were present and assisted in interviews." 578 F.3d at 580-82.

By contrast, Harris does not identify any wrongful act of any particular defendant or defendants related to his First Amendment claim. *See Wilson v. Obaisi*, 2020 U.S. Dist. LEXIS 54381, at *9 (N.D. Ill. Mar. 27, 2020) ("even giving [plaintiff] the benefit of reasonable inferences, no facts allow the Court to make an inferential leap to [individual defendant's] personal involvement); *Cf. Olson v. Champaign Cty.,* 784

F.3d 1093, 1103 (7th Cir. 2015) (facts alleged permitted reasonable inference that particular individual defendants swore to false information that led to arrest warrant, and discovery would reveal which of three individual defendants swore to the false information). Here, Harris has named the former superintendent, two police chiefs and a police captain. The Complaint does not provide any information about how these defendants were involved in retaliation against Harris. Defendants Waller, West, Calloway, and Sanchez are named only in the caption of the complaint. The only action Defendant Johnson allegedly took was sending a department-wide email regarding officer mental health. (Compl. ¶24). And Harris alleges that he sent an email in response to "Johnson and other members of CPD command staff" (*Id.* ¶26), but does not name the "other members." And the Court cannot infer from Harris simply sending an email that particular defendants then took retaliatory action against him.

Harris responds by arguing that "[o]ne or more of these individuals shared Harris's email and someone ordered that he be stripped." (Dkt. 32 at 8). This argument fails to connect any defendant to any particular wrongful act. While the Complaint refers to Harris's Commanders Kimble and Kennedy, they are not named as defendants. Therefore, Harris's First Amendment claim against the individual defendants is dismissed. Count I is dismissed without prejudice.

### B. Illinois Whistleblower Act (Count III)

The Illinois Whistleblower Act (IWA) was created "to protect employees from adverse employment actions in retaliation for reporting or refusing to engage in

unlawful conduct by their employers." *Huang v. Fluidmesh Networks, LLC*, 2017 U.S. Dist. LEXIS 111608, at *6 (N.D. Ill. July 18, 2017) (citation omitted). Harris relies on two sections of the IWA: 740 ILCS 174/15(b) and 20.1. The first prohibits employers from retaliating against an employee who discloses information "to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). Section 20.1 states that "[a]ny act or omission not otherwise specifically set forth in this Act, whether within or without the workplace, also constitutes retaliation by an employer under this Act if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing." 740 ILCS 174/20.1.

Harris alleges that his September 4 email to the Defendants and his disclosures to a news reporter were protected IWA activity and that he was stripped of his police powers in retaliation. (Dkt. 32 at 14).[4] Defendants respond that: (1) the City is immune from liability under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act" or "TIA"), (2) Harris fails to allege an adverse employment action, and (3) Harris fails to allege he disclosed any illegal activity or public corruption or wrongdoing.

---

[4] In his Complaint, Harris refers to his "September emails" (plural): "In sending the September *emails* and talking to a member of the media, Harris was attempting to and did disclose public wrongdoing." (Compl. ¶ 37) (emphasis added). However, in his reply brief, Harris clarifies that he "has alleged *two* instances of whistleblowing activity in his complaint: his September 4th email to CPD command staff and his disclosures to the news reporter." (Dkt. 32 at 14) (emphasis added). The Court therefore addresses only these two instances.

*1. Adverse Employment Action*

Under the IWA, "the employer's retaliation must constitute a materially adverse employment action and [] Illinois courts apply the same standard as for federal anti-retaliation statutes." *Elue v. City of Chi.*, 2017 U.S. Dist. LEXIS 94519, at \*12 (N.D. Ill. June 20, 2017). The IWA provides that employer retaliation against an employee includes an "act or omission [that] would be materially adverse to a reasonable employee." 740 ILCS 174/20.1.[5]

A materially adverse employment action "must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Lewis v. City of Chi.*, 496 F.3d 645, 655 (7th Cir. 2007) (citation and quotations omitted). Materially adverse employment actions fall into three categories: "(1) the employee's current wealth such as compensation, fringe benefits, and financial terms of employment including termination; (2) the employee's career prospects thus impacting the employee's future wealth; and (3) changes to the employee's work conditions including subjecting her to humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in her workplace environment." *Id.* at 653 (citation and quotations omitted).

Harris alleges that because of his September 4 email and/or disclosure to the news reporter, he was retaliated against "for his attempt to disclose and actual disclosure of public wrongdoing" and "for his disclosure of discrimination." (Compl. ¶¶ 54-56).

---

[5] Section 20.1 was added to the IWA in 2009 to show that "retaliation is not limited to defined acts but rather includes any act materially adverse to a reasonable employee, within or without the workplace." *Elue,* 2017 U.S. Dist. LEXIS 94519, at \*12 (quoting *Money Mgmt. Inc., v. Thomas*, 2017 IL App (2d) 160333-U, ¶ 29).

The retaliation was being stripped of his police powers. Although he was stripped of his police powers on September 17, 2018, his Complaint states that he was "cleared…and returned to work on November 2, 2018." (Compl. ¶¶ 30, 32).

To argue that Harris fails to allege a materially adverse employment action, Defendants rely on *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772 (7th Cir. 2007). In addition to the fact that *Nichols* was decided on summary judgment, there plaintiff did "*not* claim that his position, salary, or benefits were impacted by the paid administrative leave." *Id.* at 786 (emphasis added). Here, Harris alleges he was stripped of his police powers which is considered within CPD to be an adverse and negative personnel decision. During that time, he claims that he could not earn overtime, was forced to use his medical leave when he was not actually sick, and his future career prospects were negatively impacted. (Dkt. 32 at 13). As Defendants point out, these particular facts are not alleged in the complaint. (Dkt. 44 at 12). While a plaintiff may not amend his complaint in his response brief (*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011)), he can supplement it consistent with the pleadings. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). Harris's additional facts about the specific negative impact of being placed on leave and stripped of his police powers are consistent with his Complaint so the Court will consider them.

A recent decision by the Seventh Circuit supports this analysis. In *Kurtzhals v. Cty. of Dunn*, where a Sheriff's Office sergeant was placed on paid administrative leave for approximately three months, and he was able to show that he would have

worked twice as many hours of overtime compared to what he received in actual pay, his loss of potential additional overtime pay was a materially adverse employment action. 2020 U.S. App. LEXIS 25182, at *8 (7th Cir. Aug. 10, 2020). *Kurtzhals* and *Nichols* were decided on summary judgment.[6] The Court will require a more developed factual record to determine if Harris suffered a materially adverse employment action and whether he suffered "tangible job consequences." *Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016). *See also Mack v. City of Chi.*, 2017 U.S. Dist. LEXIS 34424, at *19 (N.D. Ill. Mar. 10, 2017) ("Whether an action is 'materially adverse' will depend on the context.") (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 69 (2006)).[7]

At this pleading stage, Harris has sufficiently pled an adverse employment action.

2. *Disclosure under the IWA*

Under 740 ILCS 174/15(b) of the IWA, an employer may not retaliate against an employee if the employee discloses information she has reasonable cause to believe is "a violation of a state or federal law, rule or regulation" to "a government or law enforcement agency." *Id.* Pursuant to 740 ILCS 174/20.1, the information must "disclo[se] or attempt[] to disclose public corruption or wrongdoing." (Unlike section 15(b), section 20.1 does not specify *to whom* the employee must disclose information.)

---

[6] *O'Neal v. City of Chi.*, 392 F.3d 909 (7th Cir. 2004) and *Lee v. Northwestern Univ.*, 2012 U.S. Dist. LEXIS 72521 (N.D. Ill. May 24, 2012), also cited by Defendants, were also decided on summary judgment.

[7] *See Baumann v. District of Columbia*, 744 F. Supp. 2d 216, 225 (D.D.C. 2010) (officer being stripped of police powers could "be seen as evidence of retaliation for protected speech" under the D.C. Whistleblower Protection Act).

Harris alleges that when he sent the September 4 email to Defendants and talked to a member of the media, he "disclos[ed] what he reasonably believed was a violation of state and/or federal law to a local government agency." (Compl. ¶ 36). His September 4 email to the individual Defendants (who are part of a law enforcement agency) meet this criteria. *See Brame v. City of North Chi.*, 2011 IL App (2d) 100760 ¶ 12 (The Illinois Whistleblower Act "requires an employee only to report to a government or law-enforcement agency, and no exceptions apply if a government or law-enforcement agency is also the employer."). Defendants do not dispute that Harris's September 4 email to the CPD Superintendent and other CPD staff would constitute whistleblowing activity.

Section 15(b) requires the employee to have a "reasonable cause to believe" that the disclosure involves a violation of state or federal law, rule, or regulation. 740 ILCS 174/15(b). At this stage, drawing inferences in Harris's favor, he had reasonable cause to believe his disclosure of discrimination against officers seeking help from EAP was disclosing a violation of federal law. Harris sufficiently pleads his IWA claim under Section 15(b).

Harris next alleges that in speaking to the news media, he "was attempting to and did disclose public wrongdoing." (Compl. ¶ 37). He alleges that "Chicago police department personnel [were] discriminating against [CPD] members who seek help from Defendant City's EAP." (*id.* ¶ 56), and police officer mental health "is a matter of great public concern. (*Id.* ¶ 33). The IWA does not define "public corruption" or "wrongdoing." Harris's allegation that he was attempting to or did disclose

discrimination against police officers for seeking help from the EAP is enough to state a claim under 740 ILCS 174/20.1 and survive Defendants' motion to dismiss.

### 3. Immunity

Finally, the City argues it is immune from IWA liability, relying on sections 2-201 and 2-109 of the TIA. *See* 745 ILCS 10/2-201 (public employees immune for making discretionary policy decisions that result in injury) *and* 745 ILCS 10/2-109 (extending immunity to public entities where officials are immune). Taken together, courts interpret sections 2-201 and 2-109 to mean that the TIA "immunizes municipalities for officials' discretionary policy decisions." *Weiler v. Vill. of Oak Lawn,* 86 F. Supp. 3d 874, 884 (N.D. Ill. 2015). The City's immunity argument raises an affirmative defense. *See Jane Doe I v. Bd. of Educ.*, 364 F. Supp. 3d 849, 862 (N.D. Ill. 2019). Dismissal based on an affirmative defense "is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (emphasis in original).

Under section 2-201, a court must decide if the act or omission is "both a determination of policy and an exercise of discretion." *Harrison v. Hardin Cty. Cmty. Unit Sch. Dist. No. 1*, 197 Ill. 2d 466, 472, 259 Ill. Dec. 440, 444, 758 N.E.2d 848, 852 (2001). Policy decisions "require the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." *Id*. at 472. "Since the [Tort Immunity] Act is in derogation of the common law, it must be construed strictly against the public entity seeking

14

immunity." *Monson v. City of Danville*, 2018 IL 122486, ¶ 15, 425 Ill. Dec. 526, 533, 115 N.E.3d 81, 88 (2018).

The Court cannot determine at this stage if the City is immune from liability under the IWA. Additional factual information is needed about the Defendants' roles and conduct in relation to Harris. The Court cannot decide now whether it was a discretionary policy decision to temporarily strip Harris of his police powers. *See Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 679 (7th Cir. 2009) (reversing grant of summary judgment to defendants and finding "one-time decision to fire one employee" was not a "policy decision" under Illinois law and so the Village was not immune under section 2-201 of the Tort Immunity Act).[8] In *Khan v. Bd. of Educ. of Chi.*, for example, the court denied the motion to dismiss plaintiff's retaliatory discharge claim because the Tort Immunity Act is an affirmative defense and "one that requires a fact-intensive inquiry that 'must be made on a case-by-case basis.'" 2018 U.S. Dist. LEXIS 201638, at *20 (N.D. Ill. Nov. 28, 2018) (citations omitted). *See also Carroll v. City of Oak Forest*, 2020 U.S. Dist. LEXIS 86612, at *18-20 (N.D. Ill. May 18, 2020) (declining to apply section 2-201 and section 2-109 immunity where complaint did not suggest defendants made a policy decision and discussing cases denying motions to dismiss for similar reasons). *Cf. Consolino v. Dart*, 2019 U.S. Dist. LEXIS 158170, at *29 (N.D. Ill. Sep. 17, 2019) (complaint alleged that defendants

---

[8] In *Valentino*, the Seventh Circuit noted that the Illinois Supreme Court had previously "reasoned that where the municipality is the pertinent actor that performed the alleged retaliatory action, section 2-109 is not implicated." 575 F.3d at 679 n.4. *See also Colon v. Town of Cicero*, 2015 U.S. Dist. LEXIS 160485, at *4 (N.D. Ill. Dec. 1, 2015) (explaining that under Illinois law, a "municipality cannot obtain § 2-109 immunity for a retaliatory discharge claim through § 2-201.").

"terminated an entire rank" "as part of a larger reorganization that involved transfers, demotions, and pay cuts for other employees," making plaintiffs' termination "part of a larger set of policy moves that unquestionably required Defendants to 'balance competing interests.'").

The City's motion to dismiss based on immunity is denied, though without prejudice to the City raising the defense if appropriate at a later stage.

## IV.    Conclusion

For the stated reasons, Defendants' Motion to Dismiss [25] is granted in part and denied in part. Count I is dismissed without prejudice. The Motion is denied as to Count III.

E N T E R :

Dated: August 18, 2020

_____
MARY M. ROWLAND
United States District Judge

16